J-A19011-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| 222 SOUTH MANOA, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEORGE J. LAVIN III, ESQUIRE AND | : | |
| GEORGE J. LAVIN & ASSOCIATES, | : | |
| PLLC | : | No. 3123 EDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered September 27, 2019
In the Court of Common Pleas of Delaware County
Civil Division at No(s):  No. 2017-005707

BEFORE:  PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED NOVEMBER 3, 2020**

George J. Lavin III, Esquire, and George J. Lavin & Associates, PLLC, (collectively, "Tenants") appeal from the judgment entered by the Court of Common Pleas of Delaware County following a bench trial and subsequent verdict rendered in favor of 222 South Manoa, LLC, ("Landlord"). The seminal issue in this case is the term of lease that was created by implication after the expiration of a written commercial lease between Tenants and Landlord. Throughout the proceedings, Tenants adamantly asserted that because there was some level of negotiation prior to the commercial lease's expiration, a month-to-month lease had been created. However, the trial court found that Tenants failed to establish the saliency and dates of these negotiations and further found that Tenants failed to provide requisite notice of their intention to vacate the leased property. Consequently, the court required Tenants to

pay the remaining balance on a full year of rent, beginning on the date of the lease's expiration. After our thorough review of the record, we conclude that the trial court did not abuse its discretion or commit an error of law in finding that the lease renewed for a full year term when Tenants failed to provide adequate notice of their intent to vacate the premises. Accordingly, we affirm.

Tenants leased commercial space from Landlord. The relationship was defined in a lease agreement, which provided for a one-year term. In that agreement, there was a clause explaining that if Tenants or Landlord did not provide written notice to the other party that it did not intend to renew the lease three months prior to the lease's expiration, the lease would automatically renew under the lease's original terms for an additional one-year term. After the first year of the lease passed and no notice was provided by either party, the lease renewed in accordance with that condition. The expiration date of the new one-year lease term became June 30, 2016.

Tenants remained on the premises beyond June 30, 2016, and did not provide any notice of an intent to terminate the lease prior to that date. However, on September 26, 2016, Tenants notified Landlord that it intended to vacate on October 31, 2016.

Relying on the ninety-day notice requirement, Landlord filed suit under the belief that it was entitled to a full year of rental payments. Tenants filed a response to Landlord's complaint, which included new matter and counterclaims asserting, among other things, that there had been an explicit rejection of the old lease agreement and ongoing negotiations for a new

contract. The new matter and counterclaims asserted, in relevant part, that the parties were engaged in intensive renewal negotiations in March 2016. Tenants claimed that these negotiations constituted a denial of the lease agreement's renewal, as written, because Tenants sought more on-site space. Landlord failed to respond to Tenants' pleading, and as a result, the substance of Tenants' averments were deemed admitted under Pa.R.C.P. 1029(b).

At trial, the court found that by utilizing a totality of the circumstances approach, Tenants failed to demonstrate: 1) that it was clearly repudiating the lease as it had been written; and 2) that both parties were engaged in meaningful negotiations to alter the lease at the end of its term. Accordingly, the terms and conditions of the written lease agreement governed the parties, and because Tenants failed to provide proper notice, the agreement renewed for another full year.

On appeal, Tenants raise six issues for our review:

1) Did the trial court err when it failed to accept factual averments in [Tenants'] new matter and counterclaims when Landlord failed to respond to those assertions?

2) Did the trial court improperly permit testimony on behalf of Landlord that contradicted its admissions due to its failure to respond to Tenants?

3) Did the trial court abuse its discretion or err as a matter of law when it based its decision on evidence and testimony that conflicted with Landlord's admissions?

4) Did the trial court improperly discredit [Tenants'] testimony?

5) Did the trial court improperly analyze and apply ***Clairton Corp. v. Geo-Con, Inc.***, 635 A.2d 1058 (Pa. Super. 1993), to the facts

- 3 -

at issue here?

6) Did the trial court improperly read and/or interpret the lease agreement?

*See* Appellant's Brief, at 4-5.

When reviewing non-jury trials, we determine whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. *See Century Indem. Co. v. OneBeacon Ins. Co.*, 173 A.3d 784, 802 (Pa. Super. 2017). We must consider the evidence in the light most favorable to the verdict winner and will reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. *See id*.

In construing a written lease agreement, "the law declares the writing to be not only the best, but the only, evidence of their agreement." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) (citation omitted). Here, the relevant portion of the lease agreement provided that the term of the lease would be for one year ending on June 30, 2015. It then provided that if neither party provided three months' written notice, "this Lease will automatically renew under the same terms and conditions for an additional one (1) year term."

The primary thrust of all six of Tenants' arguments is that the trial court erred in failing to give proper weight to the judicially admitted averments contained in Tenants' new matter and counterclaims and, as a result, erred in failing to find that the lease became month-to-month after June 30, 2016.

- 4 -

Instead, Tenants complain, the court not only permitted Landlord to testify and controvert the admissions, but also found Tenants' testimony to not be credible.

Landlord's failure to file a pleading denying the averments in Tenants' new matter and counterclaim meant that Tenants' averments were considered admitted by Landlord. *See* Pa.R.C.P. 1029(b). "Judicial admissions … are formal pleadings … by a party or his counsel which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Durkin v. Equine Clinics, Inc.*, 546 A.2d 665, 670 (Pa. Super. 1988) (citation omitted). A judicial admission cannot be contradicted by the party that made it. *See Jewelcor Jewelers and Distributors, Inc. v. Corr*, 542 A.2d 72, 75 (Pa. Super. 1988).

Here, it is clear that the trial court treated the averments in Tenants' new matter and counterclaim as judicially admitted. *See* Trial Court Opinion, 2/7/2020, at 1 n.1; 6 n.2. Despite this, Tenants argue "[t]he trial court mistakenly allowed [Landlord's] representative, Brian Quinn, to erroneously testify contrary to those [judicially admitted] facts." Appellant's Brief, at 31. While there may be some merit to Tenants' claims regarding the content of Quinn's testimony, we conclude the trial court, sitting as fact-finder, did not err or commit an abuse of discretion in its handling of the judicial admissions.

There are differences between trial by jury and trial by judge. One of these differences is that judges are presumed to be able to disregard

irrelevant or prejudicial testimony. *See Commonwealth v. Green*, 347 A.2d 682, 683 (Pa. 1975) (rejecting contention that "mere exposure to prejudicial evidence is enough to nullify a judge's verdict in a case"). Accordingly, unless Tenants can establish that the trial court relied on the parts of Quinn's testimony that are contradicted by the judicial admissions, they are due no relief.

In essence, Tenants claim the judicial admissions foreclosed any possibility that the trial court could find in favor of Landlord. Tenants rely heavily on *Clairton Corp. v. Geo-Con, Inc*., 635 A.2d 1058 (Pa. Super. 1993), to argue that since Landlord had legally admitted that the parties were negotiating a change in lease terms in March 2016, the lease agreement's renewal clause no longer controlled the outcome.

We find that there are significant distinctions between *Clairton* and the circumstances here. For instance, there is no indication in the text of *Clairton* that the lease in that case had a renewal clause, nor did it have a "hold-over" provision governing what would happen at the end of the lease's term. *See id*., at 1059.

Tenants argue the renewal clause here did not clearly establish that it applied beyond the first renewal. However, the trial court concluded that the language was clear and that it established the terms for every subsequent year.

Upon reviewing the language of the renewal clause, we agree with the

trial court. The renewal clause does not contain any restrictive language. The natural and logical reading of the clause does not limit it to only the first year. Further, as the trial court notes, both parties are experienced practitioners of law and therefore should be expected to understand the import of the language used by the renewal clause.

To escape the operation of the clear language of the renewal clause, Tenants argue that, pursuant to **Clairton**, the existence of negotiations between the parties prior to the renewal of the lease negates the application of the clause. Like the trial court, we disagree. **Clairton** dealt with a lapsed express contract, which then led to the Court's discussion on the applicability of a common-law solution. **See id**.

Finally, Tenants argue that the trial court erroneously utilized extraneous evidence to define or contradict the plain language of the lease's terms. **See** Appellant's Brief, at 50. In short, Tenants aver: 1) the lease's language indicates that the contract is subject to only one renewal period and after that, it would terminate; 2) Landlord's admissions and testimony indicate that the lease was or would be month-to-month; and 3) in accordance with **Clairton**, the negotiations meant that the lease would automatically be converted to month-to-month after its term ended. **See** Appellant's Brief, at 53.

As noted previously, the trial court disagreed with Tenants' construction of the express terms of the renewal clause. Further, we conclude that **Clairton**

does not apply under these circumstances. There is no need to search for a common-law answer; the lease agreement itself provides the renewal term in the absence of a timely written objection to renewal.

As none of Tenants' arguments on appeal merit relief, we affirm the judgment.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/03/2020</u>